UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| PAULA ROCHELLE FRENCH, | ) | Civil No. 13-0267-WQH (WVG) |
| | ) | |
| Plaintiff, | ) | REPORT AND RECOMMENDATION: |
| | ) | |
| v. | ) | DENYING PLAINTIFF'S MOTION FOR |
| | ) | SUMMARY JUDGMENT (DOC. NO. 12) |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social | ) | GRANTING DEFENDANT'S CROSS- |
| Security, | ) | MOTION FOR SUMMARY JUDGMENT |
| | ) | (DOC. NO. 13) |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

I

INTRODUCTION

On February 1, 2013, Plaintiff Paula Rochelle French ("Plaintiff"), filed a Complaint for Review of the Final Decision of the Commissioner of Social Security ("Complaint"). On May 20, 2013, defendant Carolyn W. Colvin, Acting Commissioner of Social Security, ("Defendant"), filed an Answer to the Complaint and lodged the administrative record ("TR."), pertaining to this case. On July 24, 2013, Plaintiff filed a Motion for Summary Judgment ("MSJ"). On August 12, 2013, Defendant filed an Opposition to Plaintiff's Motion

1  for Summary Judgment and a Cross-Motion for Summary Judgment
2  ("Opp.").

3      The Court, having reviewed Plaintiffs' Complaint, Defendant's
4  Answer, Plaintiff's Motion for Summary Judgment, Defendant's Cross-
5  Motion for Summary Judgment, Plaintiff's Opposition to Defendant's
6  Motion for Summary Judgment, and the Administrative Record filed by
7  Defendant, hereby finds that Plaintiff is not entitled to the relief
8  requested and therefore RECOMMENDS that Plaintiff's Motion for
9  Summary Judgment be DENIED, and Defendant's Cross-Motion for Summary
10 Judgment be GRANTED.

11                              II

12                      PROCEDURAL HISTORY

13     On March 25, 2010, Plaintiff filed an application for
14 supplemental security income under Title XVI and XIX of the Social
15 Security Act ("Act").[1/]  (TR. 17.)  On July 6, 2010, Defendant denied
16 the initial claim for benefits, and on September 28, 2010, denied
17 reconsideration.[2/]  (TR. 58-62, 64-68.)

18     Plaintiff requested a hearing before an Administrative Law
19 Judge ("ALJ") which was held on March 4, 2011.  (TR. 31-45.)
20 Plaintiff, who was represented by counsel, appeared at the hearing.
21 (Id.) On September 22, 2011, the ALJ issued his decision, concluding
22 that Plaintiff was not disabled as defined under the Act. (TR.17-
23 26.)  The ALJ's decision became the Acting Commissioner's final

24

25

26     [1/]Plaintiff's application for supplemental security income benefits is dated
27 April 15, 2010. (TR. 119-122). However, in the ALJ's Decision, it states the
   application was filed on March 25, 2010. (TR. 17).

28     [2/]The date of reconsideration was September 28, 2010. The actual letter of
   reconsideration is undated. See TR. 17.

decision when the Appeals Council denied Plaintiff's request for review on November 28, 2012. (TR. 3-6.)

III

STATEMENT OF FACTS

Plaintiff was born on March 17, 1958. (TR. 119.) Plaintiff has not been employed since 2009. (TR. 36). However, her employment history includes working as a daycare provider and as a cashier.[3] Id. Plaintiff claims she stopped working five years previously due to chronic back pain and numbness.[4] (TR. 229). Plaintiff also suffers from nontoxic nodular goiter,[5] hypertension,[6] anxiety,[7] and major depressive disorder[8] (TR. 70, TR. 231).

---

[3] The record reflects that Plaintiff worked as a commissary worker (cashier) from April 2005-August 2005 and as an at home daycare provider from 2005 to 2007. (TR. 149). However, Plaintiff's attorney claims her last period of employment was as a childcare worker through the YMCA, and Plaintiff stated at the administrative hearing that she was last employed in 2009. (TR. 153, TR. 36).

[4] Plaintiff made this statement on June 19, 2010, to Romualdo R. Rodriguez, M.D., when she was being evaluated for a clinical psychiatric consultive exam. (TR. 229).

[5] Nontoxic nodular goiter is defined as "an enlargement of the thyroid gland" caused by nodules, or lumps, on the thyroid. Goiters are seldom painful. Nontoxic goiters usually do not have noticeable symptoms, unless they become very large. Symptoms may include swelling on the neck, breathing difficulties, coughing, wheezing, and difficulty swallowing with a large goiter, feeling of pressure on the neck, and hoarseness. The Department of Medicine of the New York University Langone Medical Center (Dec. 2011) http://medicine.med.nyu.edu/conditions-we-treat/conditions/nontoxic-nodular-goiter

[6] Hypertension is defined as "high blood pressure." There are generally no symptoms, but it can result in kidney disease and kidney problems. A.D.A.M. Medical Encyclopedia (Jun. 10, 2011), http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001502.

[7] Anxiety is a feeling of fear, unease, and worry. The source of these symptoms is not always known. A.D.A.M. Medical Encyclopedia (Jun. 10, 2011) http://www.nlm.nih.gov/medlineplus/ency/article/003211.htm.

[8] Major depressive disorder is a depressed mood and/or loss of interest or pleasure in life activities for at least two weeks and at least five of the required symptoms that cause clinically significant impairment in social, work, or other important areas of functioning almost everyday. National Center for Biotechnology Informations, U.S. National Library of Medicine (2008), http://www.ncbi.nlm.nih.gov/books/NBK64063.

1    The ALJ, applying the five step sequential analysis in 20
2    C.F.R. Section 416.920, found Plaintiff was not disabled in
3    accordance with the Social Security Act Section 1614(a)(3)(A).
4    Though the ALJ determined that Plaintiff suffered from mild lumbar
5    degenerative disc disease[9/], cervical sprain, and sprain, these
6    conditions were not so debilitating as to restrict Plaintiff from
7    performing past relevant work as a child care provider.  (TR. 19-
8    25).   The ALJ determined Plaintiff could perform medium work as
9    defined in 20 CFR 416.967(c) except she is frequently able to climb,
10   stoop, kneel, and crouch. (TR. 21).  The ALJ rejected the notion
11   that Plaintiff's Residual Functional Capacity ("RFC") was low stress
12   work due to her depression and anxiety symptoms.  (TR. 34-36.)

13   Plaintiff contends that the ALJ erred in finding that she was
14   not disabled under Section 1614(a)(3)(A) of the Social Security Act,
15   because the ALJ rejected the medical opinion of Plaintiff's treating
16   physician, Melissa Hurd, M.D., when the ALJ determined Plaintiff's
17   RFC.  (MSJ at 11-12).  Plaintiff contends that the ALJ's reasons for
18   rejecting Dr. Hurd's findings were not specific and legitimate based
19   on substantial evidence of record and are therefore erroneous.(MSJ
20   6-7).  Additionally, Plaintiff asserts that there was no substantial

21

22

23   [9/]Mild lumbar degenerative disc disease (DDD) refers to a syndrome in which
a compromised disc causes low back pain.  MRI findings that are closely linked to
24   a painful disc include: disc space collapse of greater than 50% and cartilaginous
endplate errosion.  Most patients with DDD will experience low-grade continuous
25   but tolerable pain that will occasionally flare for a few days or more.  Symptoms
include continuous pain for more than six weeks centered in the lower back, that
26   may radiate to the hips and legs; pain that is frequently worse when sitting,
prolonged standing, bending forward, twisting and lifting; severe symptoms can
include numbness and tingling in the legs, as well as difficulty walking.   Peter
27   F. Ullrich, M.D., Lumbar Degenerative Disc Disease, Spine-Health (Nov. 6, 2006),
available at http://www.spine-health.com/conditions/degenerative-disc-disease/
28   lumbar-degenerative-disc-disease-symptoms.

13cv0267

1  evidence to support the ALJ's finding that his complaints lacked

2  credibility.  (MSJ at 11-12).

3      A.  <u>MEDICAL HISTORY</u>

4          1.  <u>TREATMENT WITH MELISSA HURD MEDICAL CORPORATION</u>

5      On March 11, 2010, Plaintiff was seen by Dr. Hurd for

6  bilateral leg numbness and tingling that occurred twice a week

7  mostly in the left leg.  (TR. 300-301).  During the office visit,

8  Dr. Hurd reviewed Plaintiff's x-ray results and noted that the

9  multiple views of Plaintiff's lumbar spine revealed normal alignment

10 of lumbar segments, no acute fracture, no destructive legions,

11 normal disc spaces, with the posterior elements intact.  (TR. 217-

12 218).

13     On June 8, 2010, Plaintiff was seen by Dr. Hurd for nontoxic

14 nodular goiter, backache, and hypertension.  Dr. Hurd reported that

15 Plaintiff's symptoms were out of proportion to the findings revealed

16 in the x-ray and that medication had failed Plaintiff.  After

17 conducting a physical exam of Plaintiff, Dr. Hurd noted a normal

18 curvature in Plaintiff's spine and tender lower lumbar spine in

19 paraspinous muscles.  (TR. 290-291).

20     On June 29, 2010, Dr. Hurd wrote a note on behalf of Plaintiff

21 recommending that Plaintiff's apartment be moved to the first floor

22 because she suffered from chronic back pain.  (TR. 280).

23     On July 1, 2010 Plaintiff was seen by Dr. Hurd for

24 labrynthitis.  Dr. Hurd reported that Plaintiff was healthy-

25 appearing, well-nourished, and well-developed, with no acute

26 distress, and ambulating normally.  (TR. 289).

27

28

13cv0267

1    On July 20, 2010, Plaintiff was seen by Dr. Hurd for a follow-
2    up for her backache.  Dr. Hurd examined Plaintiff and reported that
3    Plaintiff's symptoms were out of proportion to findings on x-ray and
4    Plaintiff reported pain with motion and extension.  She further
5    noted that Plaintiff had started physical therapy and she thought it
6    was likely Plaintiff had degenerative disc disease.  However, Dr.
7    Hurd also noted that Plaintiff's insurance would only cover two
8    visits at the physical therapist.  (TR. 286-287).  Subsequently, on
9    July 20, 2010, the same day as the examination, Dr. Hurd wrote a
10   note limiting Plaintiff's ability to work based on Plaintiff's
11   complaint of chronic back pain and radicular symptoms of numbness
12   and tingling in the legs.  She reiterated in the note that Plaintiff
13   had failed medications and was currently pursuing physical therapy
14   at the time to help alleviate her symptoms.  She limited Plaintiff
15   to sitting and standing for less than 25 minutes, not lifting
16   heavier than 10 pounds, no climbing and no repeated bending or
17   twisting.  (TR. 279).

18   On September 7, 2010, Plaintiff was seen by Dr. Hurd for cramps
19   and a follow-up for her backache.  Dr. Hurd did not examine her back
20   at this visit, but noted that Plaintiff was healthy-appearing, well-
21   nourished, and well-developed.  There was no note of any complaints
22   related to her back.  (TR. 284-286).

23   On March 1, 2011, Plaintiff was seen by Dr. Hurd for sinus pain
24   and a dry cough.  At the visit, Dr. Hurd noted that Plaintiff's
25   lawyer recommended she see a pain specialist.  Plaintiff also told
26   Dr. Hurd that she had attended physical therapy twice, but could no
27
28

13cv0267

1  longer afford to go.  Dr. Hurd noted Plaintiff did not follow her

2  home exercise program all the time, but used Norco[10] periodically to

3  relieve her pain.  (TR. 281).  During the visit, Dr. Hurd noted that

4  her general appearance was overweight and that Plaintiff was in no

5  acute distress.  Dr. Hurd reported her mental status as normal with

6  recent memory and remote memory as normal.  (TR. 282).  She also

7  reported her motor strength and tone as normal, with no

8  contractures, malalignment, tenderness, or bony abnormalities, and

9  normal movement of all extremities. (TR. 283).  Dr. Hurd reviewed

10  Plaintiff's last x-ray (no date) and reported no clear manner of

11  causation of Plaintiff's chronic back pain.  (TR. 284).  Dr. Hurd's

12  assessment plan was for Plaintiff to lose weight via home exercise

13  program, and to obtain an MRI on Plaintiff's lumbar spine.  (TR.

14  283-284).

15         2.  <u>PSYCHOLOGICAL CONSULTATION WITH ROMUALDO R.
           RODRIGUEZ, M.D.</u>

16

17      Plaintiff was seen by Dr. Rodriguez for a clinical

   psychiatric consultive examination.  (TR. 227-232).  Dr. Rodriguez

18  reported on June 19, 2010, that Plaintiff had no history of mental

19  health care or treatment, including any type of counseling.  (TR.

20  227).  During the examination, Plaintiff was coherent and organized

21  and there was no tangentially or loosening of associations.  (TR.

22  229).  She was relevant and non delusional. (TR. 229). There was no

23

24      [10] Norco is a combination medication used to relieve moderate to severe
pain.  It contains a hydrocodone, a narcotic pain reliever,and acetaminophen, a

25  non-narcotic pain reliever.  WebMD (July 2013), http://www.webmd.com/drugs/drug-
63-Norco+Oral.aspx.

26

27

28

1   bizarre or psychotic thought intent and she denied recent auditory

2   or visual hallucinations.  (TR. 229-230). She was alert and oriented

3   in all spheres and appeared to be at least of average intelligence.

4   (TR. 230).

5        During the examination, Plaintiff reported that "she uses a

6   ride from others, drives her own car, runs errands, goes to the

7   store, cooks and makes snacks, participates in household chores,

8   dresses and bathes herself.  She denied any significant outside

9   activities except for occasional walks and described television as

10  her only hobby. She can leave home alone, handle her own cash and

11  pay her own bills." (TR. 229).

12       Plaintiff was able to understand, remember and carry out

13  simple one or two step and detailed and complex instructions and was

14  slightly limited in her ability to relate and interact with

15  supervisors, coworkers, and the public, maintain concentration,

16  attention, persistence, and pace; associate with day to day work

17  activity including attendance and safety; adapt to stresses common

18  to a normal work environment; accept instructions from supervisors;

19  maintain regular attendance in the work place and perform work

20  activities on a consistent basis; and perform work activities

21  without special or additional supervision.  (TR. 232).  Plaintiff

22  was diagnosed with major depressive disorder and a Global Assessment

23  of Functioning ("GAF") of 65 indicating some mild symptoms or some

24

25

26

27

28

13cv0267

1  difficulty in social, occupational, or school functioning.[11]  (TR.

2  231-232).

3          3.   PHYSICAL RESIDUAL FUNCTIONAL CAPACITY ASSESSMENT
               WITH M. YEE, M.D.

4

5          A Physical Residual Functional Capacity Assessment dated

6  June 29, 2010, by Dr. Yee, a state medical consultant, found that

   objective medical evidence supported a finding that the Plaintiff
7
   could perform a significant range of light work.  (TR. 235-238).
8
   Plaintiff was found to be only occasionally able to climb stairs and
9
   ramps, and occasionally balance, stoop, kneel, crouch, and crawl,
10
   but never climb ladders, ropes or scaffolds.  (TR. 235-238).Dr. Yee
11
   concluded that Plaintiff needed to avoid concentrated exposure to
12
   vibration and hazards.
13
          Dr. Yee also concluded that Plaintiff's current diagnosis of
14
   backache, hypertension and goiter, were not so out of control that
15
   they could not be treated with medications.  (TR. 254).  Dr. Yee
16
   considered Plaintiff's physical exam that appeared to have normal
17
   findings, negative straight leg raising findings, Plaintiff's full
18
   motor strength and  only tender to palpitation on lumbar spine
19
   paraspinal muscles.  (TR. 254).  His opinion was affirmed by S.
20
   Reddy, M.D., on September 7, 2010.  (TR. 270).
21

22

23

24     [11]  The GAF is a numeric scale (0 through 100) used by mental health
       clinicians and physicians to rate subjectively the social, occupational, and
25     psychological functioning of adults.  The scale is presented and described in the
       Diagnostic and Statistical Manual of Mental Disorders (DSM) published by the
26     American Psychiatric Association.  (See TR. 231 for Dr. Rodriguez's diagnosis and
       assignment of Plaintiff's GAF score.).
27

28
                                     9                              13cv0267

4.   <u>MENTAL HEALTH ASSESSMENT WITH H. AMADO, M.D.</u>

On May 15, 2009, Dr. H. Amado assessed Plaintiff's mental functional capacity based solely upon Plaintiff's medical records. (TR. 239-252). Dr. Amado found that the objective medical evidence supported a finding that the claimant had medically determinable major depressive disorder and ruled out anxiety disorder not otherwise specified. (TR. 242-243).   Dr. Amado also found that Plaintiff was mildly restricted in activities of daily living, mild difficulties maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and had no episodes of decompensation. (TR. 247).

Dr. Amado concluded that if Plaintiff "is properly treated for depression she could easily recover from her symptoms in the next twelve months." (TR. 252). Dr. Amado's opinion was affirmed by Nicole Lazorwitz, Psy.D., on September 14, 2010. (TR. 271).

5.   <u>ORTHOPEDIC CONSULTATION WITH THOMAS J. SABOURIN, M.D., ORS</u>

On August 4, 2011, Plaintiff was seen by Thomas J. Sabourin, M.D., for a clinical orthopedic consultive examination.   The physical examination conducted by Dr. Sabourin included formal physical examination procedures and observations of Plaintiff's movements and actions during the taking of the history and physcial examination. Dr. Sabourin noted that Plaintiff is a well-nourished, well-developed female in no acute distress.  Plaintiff is described as sitting and standing with normal posture, without any tilt or lists, and as sitting comfortably during the examination.   During

13cv0267

1   the examination, Dr. Sabourin observed that Plaintiff brought her
2   cane to the examination, but walked without the cane voluntarily
3   around the examination room. In addition, Plaintiff was able to get
4   in and out of the chair, and on and off the examination table
5   satisfactorily.  Plaintiff was able to sit on the examination table
6   with her legs straight out in front of her.  (TR. 313-314).

7       Dr. Sabourin reported that Plaintiff is able to lift and
8   carry fifty pounds occasionally and twenty-five pounds frequently;
9   stand six hours, walk six hours, and sit six hours in an eight hour
10  workday; does not require a cane for ambulation; can continuously
11  reach, handle, finger, feel, push, and pull; can continuously use
12  the feet for operation of foot controls; frequently climb, balance,
13  stoop, kneel, crouch or crawl; and can only occasionally be exposed
14  to unprotected heights.  (TR. 318-325).

15      Dr. Sabourin also reviewed Plaintiff's medical records,
16  including a report of an MRI taken on July, 14, 2011.  He noted that
17  the MRI shows relatively mild changes in Plaintiff's lumbar spine
18  which would not account for her symptomatolgy and especially her
19  numbness and weakness.  He also noted that the severity and duration
20  of her complaints were in significant disproportion to the
21  determinable condition. (TR. 316-317).

22      B.   TESTIMONY AT THE ADMINISTRATIVE HEARING

23          1.   TESTIMONY OF PLAINTIFF, PAULA R. FRENCH

24      At the hearing, Plaintiff stated that she had a driver's
25  license, but had difficulty driving long distances because her hips
26  hurt.  She stated that she had last worked in 2009 for one week at

27
28

13cv0267

a daycare.  She reported that she had problems with her legs, back, shoulders, and carpal tunnel syndrome, as well as depression and anxiety.  She stated that she was able to lift 5-10 pounds, sit for 20-25 minutes, stand for 20 minutes, and had problems going up and down the stairs.  She took Norco, Soma[12], and Xanax[13] and stated that her medications made her sleepy, forgetful, and lose concentration.  She complained of urinary frequency.

IV

SUMMARY OF APPLICABLE LAW

A. Social Security Act and Disability Determination

The Act provides for the payment of insurance benefits to persons who contributed to the program and who suffer from physical or mental disability. 42 U.S.C. § 423(a)(1)(D). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months..." Id. An Administrative Law Judge ("ALJ") will review an initial disability determination at an administrative hearing. 20 C.F.R. § 404.929 (2013).

_____

[12] Soma contains carisoprodol which is used short-term to treat muscle pain and discomfort. It is usually used along with rest, physical therapy, and other treatments. It works by helping to relax the muscles. WebMD (March 2013), http://www.webmd.com/drugs/drug-12153-Soma+Oral.aspx.

[13] Xanax contains alprazolam which is used to treat anxiety and panic disorders.  It belongs to a class of medications called benzoiazepines which act on the brain and nerves (central nervous system) to produce a calming effect. WebMD (March 2013), http://www.webmd.com/drugs/drug-9824-Xanax+Oral.aspx.

13cv0267

1    The Secretary of the Social Security Administration
2    established a five-step sequential evaluation process for an ALJ at
3    a hearing to determine whether the claimant qualifies as disabled.
4    See 20 C.F.R. §§ 404.1520, 416.920 (2013). The ALJ will address the
5    following five steps to determine if a person is disabled: first,
6    whether the claimant is engaged in substantial gainful activity;
7    second, whether the claimant has a medically severe impairment or
8    combination of impairments; third, whether the claimant has a severe
9    impairment that is equivalent to a listed impairment that precludes
10   substantial gainful activity; fourth, whether the claimant may
11   perform work he performed in the past despite a severe impairment;
12   fifth, whether the claimant is able to perform other work in the
13   national economy in view of his age, education, and work experience.
14   20 C.F.R. § 404.1520(a)(2013).

15       B. ALJ Determination of Residual Functional Capacity

16       Prior to step four, the ALJ must determine the claimant's
17   residual functional capacity ("RFC") "to do physical and mental work
18   activities on a sustained basis despite limitations from his
19   impairments." See 20 C.F.R. § 404.1520. The ALJ must assess all of
20   the "relevant medical and other evidence" and consider "all of the
21   claimant's impairments, including impairments that are not severe,"
22   to determine the claimant's RFC. 20 C.F.R. §§ 404.1520(e),
23   404.1545(a)(3).

24       C. Remedy

25       If the district court finds error with the ALJ's
26   determination, the court may remand the case to the Social Security

27

28

13cv0267

Administration to award benefits or for additional evidence and findings. <u>Swenson v. Sullivan</u>, 876 F.2d 683, 689 (9th Cir. 1989). Courts typically remand for an award of benefits "where (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1292 (9th Cir. 1996); <u>see also</u> <u>Harmon v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir. 2000). The court should award benefits if the ALJ fully developed the record and another "administrative procee- ding would serve no useful purpose." <u>See</u> <u>Smolen</u>, 80 F.3d at 1292.

In contrast, the district court should remand the case for additional evidence and findings "where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all of the evidence were properly evaluated." <u>Harman</u>, 211 F.3d at 1179-81. Furthermore, the court should remand a case if additional proceedings can remedy defects in the original administrative proceedings. <u>McAllister v. Sullivan,</u> 888 F.2d 599, 603 (9th Cir. 1989)(citing <u>Lewin v. Schweik-er,</u> 654 F.2d 631, 635 (9th Cir. 1981)). Essentially, "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings." <u>Harman</u>, 211 F.3d at 1179 (citing <u>Lewin</u>, 654 F.2d at 635).

V

13cv0267

<u>ALJ'S FINDINGS</u>[14]/

The ALJ made the following pertinent findings:

    1.   [Plaintiff]  has  not  engaged  in substantial  gainful  activity  since  March 25,  2010,  the  application  date  (20  CFR 416.971 *et seq.*).

    2. [Plaintiff] has the following severe impairments: mild lumbar degenerative disc disease  and  cervical  sprain  (20  CFR 416.920(c)).

    3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically  equals  one  of  the  listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

    The record does not report the existence of any  functional  limitations  and  or diagnostic  test  results,  which  would suggest that the impairments meet or equal the criteria of any specific listing. In addition,  no  treating  or  examining

---

[14]/ The ALJ's findings are found at TR. 29-37.

13cv0267

physician has reported findings, which
either meet or are equivalent in severity
to criteria of any listed impairment, nor
are such findings indicated or suggested by
the medical evidence of record.

4.   After careful consideration of the
entire record, the [ALJ] finds that the
[Plaintiff] has the residual functional
capacity to perform medium work, as defined
in 20 CFR 416.967(c)except [Plaintiff] is
frequently able to climb, stoop, kneel, and
crouch.

In making this finding, the [ALJ] has
considered all symptoms and the extent to
which these symptoms can reasonably be
accepted as consistent with the objective
medical evidence and other evidence, based
on the requirements of 20 CFR 416.929 and
SSRs 96-4p and 96-7p.  The [ALJ] has also
considered opinion evidence in accordance
with the requirements of 20 CFR 416.927 and
SSRs 96-2p, 96-5p, and 06-3p.

13cv0267

1    In considering the [Plaintiff]'s symptoms,
2    the [ALJ] must follow a two-step process in
3    which it must first be determined whether
4    there is an underlying medically
5    determinable physical or mental
6    impairment(s)-i.e., an impairment(s) that
7    can be shown by medically acceptable
8    clinical and laboratory diagnostic
9    techniques-that could reasonably be
10   expected to produce the [Plaintiff's] pain
11   or other symptoms.

13   Second, once an underlying physical or
14   mental impairment(s) that could reasonably
15   be expected to produce the [Plaintiff's]
16   pain or other symptoms has been shown, the
17   [ALJ] must evaluate the intensity,
18   persistence, and limiting effects of the
19   [Plaintiff's] symptoms to determine the
20   extent to which they limit the
21   [Plaintiff's] functioning. For this
22   purpose, whenever statements about
23   intensity, persistence, or functionally
24   limiting effects of pain or other symptoms
25   are not substantiated by objective medical
26   evidence, the [ALJ] must make a finding on

13cv0267

1          the credibility of the statements based on

2          a consideration of the entire case record.

3

4          At the hearing, [Plaintiff] stated that she

5          had a driver's license, but had difficulty

6          driving long distances because her hips

7          hurt.  She stated that she last worked in

8          2009 for one week at a daycare.  She

9          reported that she had problems with her

10         legs, back, shoulders, and carpal tunnel

11         syndrome, as well as depression and

12         anxiety.  She stated that she was able to

13         lift 5-10 pounds, sit for 20-25 minutes,

14         stand for twenty minutes, and had problems

15         going up and down stairs.  She took Norco,

16         Soma, Xanax, and stated that her

17         medications made her sleepy, forgetful, and

18         [lose] concentration.  She complained of

19         urinary frequency having to use the

20         restroom a lot.

21

22         After careful consideration of the

23         evidence, the [ALJ] finds that the

24         [Plaintiff]'s medically determinable

25         impairments could reasonably be expected to

26         cause the alleged symptoms; however, the

27

28

13cv0267

1          [Plaintiff]'s statements concerning the
2          intesity, persistence and limiting effects
3          of these symptoms are not credible to the
4          extent they are inconsistent with the above
5          residual functioning capacity assessment.
6
7          In terms of the [Plaintiff]'s alleged
8          disabling impairments, the record fails to
9          document any objective clinical findings
10         establishing that the [Plaintiff] was not
11         able to perform work in light of the
12         reports of the treating and examining
13         practitioners and the findings made on
14         examination.
15
16         Melissa Hurd, M.D. reported on June 8,
17         2010, that the [Plaintiff]'s symptoms were
18         out of proportion with her findings on x-
19         ray. (Exhibit 1F page 5). On July 1,
20         2010, Dr. Hurd reported that the
21         [Plaintiff] had a normal gait, 2+ reflexes
22         throughout, and intact coordination
23         testing. Dr. Hurd reported in treatment
24         notes on July 21, 2010, that the
25         [Plaintiff] had 5/5 motor strength in the
26         lower extremities in each muscle group.
27
28

13cv0267

(Exhibit 16F pages 7 and 9).  Dr. Sabourin reported on August 4, 2011, that the [Plaintiff] sat and stood in a normal posture and sat comfortably. She walked without a limp and without her cane.  She was able to get in and out of a chair and on and off the examination table without difficulty.  She was able to sit on the examination table with her legs straight out in front of her.  Toe and heel walking were normal.  She had a normal range of motion of the cervical spine.  There was no lumbar palpable spasm, swelling, or warmth. Straight leg raising was negative.  She had a full range of motion of the upper and lower extremities.  She had give way testing in all muscles of the upper and lower extremities.  (Exhibit 18F pages 2-4).  These findings are indicative that the [Plaintiff]'s complaints are not fully substantiated by the objective medical conclusions and her symptoms may not have been as limiting as the [Plaintiff] has alleged in connection with this application.

13cv0267

1           The record fails to document that the

2           [Plaintiff] has been hospitalized for her

3           impairment or indicate that the [Plaintiff]

4           has received significant active care other

5           than for conservative routine maintenance.

6           The [Plaintiff] complains of disabling back

7           and leg pain; however, the record fails to

8           show that the [Plaintiff] has any evidence

9           of significantly severe root or cord

10          impingement or encroachment, canal recess

11          or foraminal stenosis, and no evidence of

12          significantly severe bony abnormalities.

13          Her own doctor stated that her complaints

14          were out of proportion with the medical

15          findings.  There has been no significant

16          increase or changes in prescribed

17          medications reflective of an uncontrolled

18          condition, nor did the [Plaintiff] describe

19          side effects from her medication that would

20          prevent her from substantial gainful

21          activity.  Furthermore, no treating or

22          examining source determined that the

23          [Plaintiff]'s impairments were totally

24          debilitating or rendered the [Plaintiff]

25          completely unemployable.

26

27

28

13cv0267

1    The [ALJ] has taken into consideration the
2    nature, location, onset, duration,
3    frequency, radiation, and intensity of the
4    [Plaintiff]'s pain, as well as
5    precipitating and aggravating factors; the
6    type, dosage, effectiveness, and adverse
7    side effects of any pain medication; other
8    treatment, other than medication, for
9    relief of pain; functional restrictions;
10   and the [Plaintiff]'s daily activities, and
11   finds that her allegations of disabling
12   pain are out of proportion with the record.
13
14   The [Plaintiff] has admitted certain
15   abilities which provide support for part of
16   the residual functioning capacity
17   conclusion in this decision. As detailed
18   above, the [Plaintiff], her daughter and
19   her examining physicians have described
20   daily activities which were not limited to
21   the extent that one would expect, given the
22   complaints of disabling symptoms and
23   limitations. The overall evidence suggests
24   that the [Plaintiff] has the ability to
25   care for herself and maintain her home.
26   Furthermore, the performance of the
27
28

13cv0267

1        [Plaintiff]'s daily activities as described

2        is not inconsistent with the performance of

3        many basic work activities.

4

5        As for the opinion evidence, Trashanda

6        French, [Plaintiff]'s daughter reported in

7        a third party adult function report on June

8        2, 2010, that the [Plaintiff] had problems

9        lifting, squatting, bending, standing,

10       reaching, walking, sitting, kneeling, stair

11       climbing, completing tasks, concetration,

12       and using her hand and that her legs and

13       back are always hurting her. (Exhibit 5e).

14       The [ALJ] took into consideration this

15       individual's opinion regarding the

16       [Plaintiff]'s residual functional capacity

17       because of her close contact with the

18       [Plaintiff] over a period of time; however,

19       there is no evidence that this individual

20       is a physician, psychiatrist, psychologist,

21       chiropractor, osteopath, nurse, physical

22       therapist, mental health therapist, or

23       other type of medical or mental health

24       specialist or worker. There is no evidence

25       that she has ever had any medical training

26       or worked in any medical field or

27

28

13cv0267

1    institution, or that she is familiar with

2    the Social Security Act, rules, or

3    regulations or the U.S. Department of Labor

4    *Dictionary of Occupational Titles*. The

5    objective evidence of the record does not

6    support this individual's allegations as to

7    the limitations of the [Plaintiff]'s

8    residual functional capacity. As such this

9    is only the opinion of one that has a

10    familial relationship with the [Plaintiff]

11    and this opinion cannot be considered to

12    have any significant weight regarding the

13    [Plaintiff]'s residual functional capacity.

14

15    Dr. Hurd reported on July 20, 2010, that

16    the [Plaintiff] suffered from chronic back

17    pain and had radicular symptoms of numbness

18    and tingling, in the legs. She had failed

19    medications and was pursuing physical

20    therapy. It was reported that she could

21    sit for less than twenty-five minutes and

22    stand for less than twenty-five minutes and

23    that walking seemed to exacerbate her

24    symptoms. She was found to not be able to

25    lift heavier than ten pounds nor perform

26    repeated bending or twisting and cannot

27

28

13cv0267

1    climb.  (Exhibit 15f page 1).  A treating

2    physician's medical opinion, on the issue

3    of the nature and severity of an impairment

4    is entitled to special significance; and,

5    when   supported   by   objective   medical

6    evidence   and   consistent   with   otherwise

7    substantial evidence of record, entitled to

8    controlling   weight.   (Social   Security

9    Ruling 96-2p).  However, the opinion of the

10   doctor, who assessed the [Plaintiff] with

11   marked physical limitations is not afforded

12   any  significant  weight  as  this  opinion

13   conflicts with the substantial evidence of

14   record,   documenting   less   severe

15   limitations.  (Social Security Ruling 96-

16   6p).   The   doctor   did   not   adequately

17   consider the entire record, including her

18   own treatment  records for the [Plaintiff].

19   Dr. Hurd reported on June 8, 2010, that the

20   [Plaintiff]'s   symptoms   were   out   of

21   proportion  with  her  findings  on  x-ray.

22   (Exhibit 1F page 5).  She also reported

23   that the [Plaintiff] had virtually normal

24   physical examinations.  (Exhibit 16F pages

25   7 and 9).  The objective evidence in the

26

27

28

13cv0267

1    record does not support the level of
2    severity that this doctor assigns.

3

4                          ...

5

6    A *Medical Source Statement of Ability to do*
7    *Work-Related Activities (Physical)* dated
8    August 4, 2011 by Dr. Sabourin found that
9    the objective medical evidence supported a
10   finding that the [Plaintiff] can
11   occasionally lift and carry 21-50 pounds
12   and 11-20 pounds frequently; can stand six
13   hours, walk six hours, and sit six hours in
14   an eight hour workday; does not require a
15   cane for ambulation; can continuously
16   reach, handle, finger, feel, push, and
17   pull; can continuously use the feet for
18   operation of foot controls; frequently
19   climb, balance, stoop, kneel, crouch or
20   crawl; and can occasionally be exposed to
21   unprotected heights. (Exhibit 18F pages 6-
22   11).

23

24   Pursuant to 20 C.F.R. § 404.1527, the [ALJ]
25   assigns significant weight to these
26   consultive examiners' opinions, as they are

27

28
                          26

1    well-supported by the medical evidence,
2    including the [Plaintiff]'s medical history
3    and clinical and objective signs and
4    findings as well as detailed treatment
5    notes, which provides a reasonable basis
6    for [Plaintiff]'s chronic symptoms and
7    resulting limitations.    Moreover, the
8    opinions are not inconsistent with other
9    substantial evidence of record.    In
10   addition, these physicians are examining
11   sources that are familiar with Social
12   Security Rules and Regulations and legal
13   standards set forth therein and best able
14   to provide superior analysis of the
15   [Plaintiff]'s impairments and resulting
16   limitations.

17

18   A *Physical Residual Functional Capacity*
19   *Assessment* dated June 29, 2010, by M. Yee,
20   M.D., a State medical consultant, found
21   that the objective medical evidence
22   supported a finding that the [Plaintiff]
23   could perform a significant range of light
24   work. The [Plaintiff] was found to [be
25   able] to occasionally to climb stairs and
26   ramps, and occasionally balance, stoop,

27

28

27

13cv0267

1     kneel, crouch, and crawl, but never climb

2     ladders, ropes or scaffolds.  She was found

3     to need to avoid concentrated exposure to

4     vibration and hazards (machinery, heights,

5     etc.).  (Exhibit 3F).  This opinion was

6     affirmed by S. Reddy, M.D., on September 7,

7     2010.  (Exhibit 11F).

8

9     The [ALJ], per SSR 96-6p considered these

10    opinions because they were based upon a

11    thorough  review  of  the  evidence  and

12    familiarity with Social Security Rules and

13    Regulations and legal standards set forth

14    therein.    Although  the  state  agency

15    consultants opined that the [Plaintiff] was

16    only  capable  of  a  substantial  range  of

17    light  work,  the  [Plaintiff]'s  medical

18    condition indicates less severe exertional

19    limitations.  Moreover, these doctors did

20    not  have  the  opportunity  to  review  the

21    additional medical evidence submitted after

22    the  evaluations  or  to  listen  to  the  sworn

23    testimony of the [Plaintiff] or to observe

24    the [Plaintiff]'s demeanor.

25

26

27

28

13cv0267

A *Psychiatric Review Technique* dated June 29, 2010, by M. Amado, M.D., a State psychiatric consultant, found that the objective medical evidence supported a finding that the [Plaintiff] had medically determinable major depressive disorder and ruled out anxiety disorder not otherwise specified. The [Plaintiff] was found to be mildly restricted in activities of daily living; have mild difficulties maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace, and have no episodes of decompensation. The [Plaintiff] was not found to have a history of chronic organic mental disorder. (Exhibit 4f). This opinion was affirmed by Nicole Lazorwitz, Psy.D., on September 14, 2010. (Exhibit 12f). The [ALJ] has assigned significant weight to the State psychiatric consultants' opinions with regard to [Plaintiff]'s lack of severe mental impairment pursuant to 20 C.F.R. § 404.1527 and SSR 96-6p because they were based upon a thorough review of the evidence and familiarity with Social Security Rules and

13cv0267

Regulations and legal standards set forth therein.  They were well supported by the medical evidence, including the [Plaintiff]'s medical history and clinical and objective signs and findings as well as detailed treatment notes, which provides a reasonable basis for [Plaintiff]'s chronic symptoms and resulting limitations. Moreover, these opinions are not inconsistent with other substantial evidence of record.

5.  The [Plaintiff] is capable of performing past relevant work as a child care provider.  This work does not require the performance of work-related activities precluded by the [Plaintiff]'s residual functional capacity (20 CFR 416.965).

The exertional and non-exertional requirements of this job are consistently within the [Plaintiff]'s residual functional capacity as determined in this decision, and therefore the [Plaintiff] retains the capacity to perform "past

13cv0267

1    relevant work."  (Social Security Rulings

2    82-61 and 82-62).

3

4    In  comparing  the  [Plaintiff]'s  residual

5    functional capacity with the physical and

6    mental demands of this work, the [ALJ]

7    finds that the [Plaintiff] is able to

8    perform  it  as  actually  and  generally

9    performed.

10

11   Although  the  [Plaintiff]  is  capable  of

12   performing past relevant work, there are

13   other jobs existing in the national economy

14   that  she  is  also  able  to  perform.

15   Therefore, the [ALJ] makes the following

16   alternative findings for step five of the

17   sequential evaluation process.

18

19   The [Plaintiff] was born on March 17, 1958

20   and was 52 years old, which is defined as

21   an individual closely approaching advanced

22   age, on the date the application was filed

23   (20 CFR 416.963).  The [Plaintiff] has at

24   least a high school education and is able

25   to communicate in English (20 CFR 416.964).

26   Transferability  of  job  skills  is  not

27   material to the determination of disability

28

31

1   because using the Medical-Vocational Rules

2   as a framework supports a finding that the

3   [Plaintiff] is "not disabled," whether or

4   not the [Plaintiff] has transferable job

5   skills.   (See SSR 82-41 and 20 CFR Part

6   404, Subpart P, Appendix 2).

7

8   In the alternative, considering the

9   [Plaintiff]'s age, education, work

10  experience, and residual functional

11  capacity, there are other jobs that exist

12  in significant numbers in the national

13  economy that the [Plaintiff] can also

14  perform (20 CFR 416.969 and 416.969(a)).

15

16  In determining whether a successful

17  adjustment to other work can be made, the

18  [ALJ] must consider the [Plaintiff's]

19  residual functional capacity, age,

20  education, and work experience in

21  conjunction with the Medical-Vocational

22  Guidelines, 20 CFR Part 404, Subpart P,

23  Appendix 2.  If the [Plaintiff] can perform

24  all or substantially all of the exertional

25  demands at a given level of exertion, the

26  medical-vocational rules direct a

27  conclusion of either "disabled" or "not

28

32

1   disabled" depending upon the [Plaintiff's]
2   specific vocational profile (SSR 83-11).
3   When the [Plaintiff] cannot perform
4   substantially all of the exertional demands
5   of work at a given level of exertion and/or
6   has nonexertional limitations, the medical-
7   vocational rules are used as a framework
8   for decision making unless there is a rule
9   that directs a conclusion of "disabled"
10  without considering the additional
11  exertional and/or nonexertional limitations
12  (SSRs 83-12 and 83-14). If the [Plaintiff]
13  has solely nonexertional limitations,
14  section 204.00 in the Medical-Vocational
15  Guidelines provides a framework for
16  decision making (SSR 85-15).
17  If the [Plaintiff] had the residual
18  functional capacity to perform the full
19  range of medium work, considering the
20  [Plaintiff]'s age, education, and work
21  experience, a finding of "not disabled"
22  woud be directed by Medical-Vocational Rule
23  203.22. However, the additional
24  limitations have little or no effect on the
25  occupational base on unskilled medium work.
26  A finding of "not disabled" is therefore
27
28

13cv0267

appropriate under the framework of this
rule.

6.   The [Plaintiff] has not been under a
disability, as defined in the Social
Security Act, since March 25, 2010, the
date the application was filed (20 CFR
416.920(f).

VI

STANDARD OF REVIEW

Unsuccessful applicants for Social Security benefits may seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. § 405(g).  Upon review, the Commissioner's decision must be affirmed if it was supported by substantial evidence and based on proper legal standards.  Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005).  Substantial evidence means "more than a mere scintilla" but less than a preponderance and must be "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

Courts must examine the administrative record as a whole. Gonzalez v. Sullivan, 914 F.2d 1197, 1200 (9th Cir. 1990).  The Commissioner's decision must be set aside, even if supported by substantial evidence, if improper legal standards were applied in reaching that decisions.  See, e.g., Benitez v. Califano, 573 F.2d 653, 655 (9th Cir. 1978).  However, "[w]here evidence can rationally be interpreted in more than one way, the court must uphold the

13cv0267

1   Commissioner's decision.  <u>Mayes v. Massanar</u>, 276 F.3d 453, 459 (9th

2   Cir. 2001).

3                                    VII

4                               <u>DISCUSSION</u>

5       A.   <u>THE ALJ PROPERLY REJECTED THE TREATING PHYSICIAN'S
             OPINIONS</u>

6

7          Plaintiff argues she was denied Social Security disability

8   benefits because the ALJ did not provide specific and legitimate

9   reasons for rejecting the opinion of her treating physician, Dr.

    Hurd.  (Doc. No. 12 at 4).  Specifically, she alleges that, while

10  the ALJ cited multiple reasons for not relying solely on Dr. Hurd's

11  opinion, the ALJ's reasons were not sufficiently specific and

12  legitimate enough to give more deference to a consulting physician.

13  (Doc. No. 12 at 4-10).

14

15         Defendant argues that the ALJ properly evaluated the medical

16  evidence by discussing and considering the various medical opinions

    and by reviewing and citing to the objective medical evidence as a

17  whole.  (Doc. No. 14-1 at 6-7).  Defendant contends that in the

18  AlJ's evaluation of these findings and opinions he met his burden of

19  providing specific and legitimate reasons for the weight given to

20  the various medical opinions.  (Doc. No. 14-1 at 6).  Defendant

21  further asserts that the ALJ did not discredit the treating

22  physician's opinion, but merely discredited the July 20, 2010 letter

23  that prescribed Plaintiff's limitations.  (Doc. No. 14-1 at 7).

24         1.   <u>APPLICABLE LAW</u>

25         The opinions of treating physicians are generally entitled

26  greater weight than the opinions of examining and non-examining

27

28
                                    35

                                                              13cv0267

physicians.  See 20 C.F.R. § 404.1502; see also Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).  The ALJ may reject the treating physician's opinion in favor of another physician's opinion if the evidence in the record supports the alternative conclusion. See Orn, 495 F.3d at 632. When a treating physician's opinion conflicts with another doctor's, the ALJ must provide only "specific and legitimate" reasons for discounting the treating doctor's opinion. Dominguez v. Colvin, 927 F.Supp.2d 846, 858 (9th Cir. 2013) (citing Orn, 495 F.3d at 632).  The ALJ may discredit a treating physician's opinion if it is inconsistent with other substantial evidence in the record or is not well-supported by medically accepted clinical and laboratory diagnostic techniques.  Orn, 495 F.3d at 631-32.

The ALJ may satisfy the requirement of providing specific and legitimate reasons by "setting out a detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The ALJ must not only offer his own conclusions, he must also explain why his interpretations are correct. Orn, 495 F.3d at 631 (citing Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).

If the opinion is assigned less weight, the ALJ must weigh the opinion using factors listed in 20 C.F.R. § 404.1527(c). Id. at 632.  The factors include: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability of the opinion;

13cv0267

(4) consistency of the opinion with the record as a whole; (5) the specialization of the treating source; and (6) any other factors brought to the attention of the ALJ which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)(I)-(ii), (c)(3)-(6); see Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001).

2.   ANALYSIS

In determining Plaintiff's RFC for medium work, except that she is frequently able to climb, stoop, kneel, and crouch, the ALJ provided specific and legitimate reasons for rejecting Dr. Hurd's opinion.  Upon review of the record as a whole, the Court finds that substantial evidence supports these reasons.  Gonzalez, 914 F.2d at 1200.

First, the ALJ credited the opinions of the examining physicians, Drs. Sabourin and Rodriguez, because their opinions are supported by independent clinical findings and thus constituted substantial evidence even if contradicted by the treating physician. (TR. 24); Orn, 495 at 632; Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Thomas, 278 F.3d 947, 957 (9th Cir. 2001) ("The opinions of non-treating ... physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.").

After an orthopedic consultative examination of Plaintiff on August 4, 2011, Dr. Sabourin noted that Plaintiff's "severity and duration of her complaints [are] in significant disproportion to the determinable condition."  (TR. 317).  Dr. Sabourin considered Plaintiff's entire medical record, including Dr. Hurd's treatment notes and Plaintiff's most recent MRI.  (TR. 316).  Dr. Sabourin

13cv0267

opined that Plaintiff's MRI on July 14, 2011, reveals only mild changes in the lumbar spine that would not account for Plaintiff's symptoms, especially her numbness and weakness. (TR. 317). Based on the physical examination and the medical record, Dr. Sabourin concluded that Plaintiff is able to lift and carry 50 pounds occasionally, and 25 pounds frequently; does not have any manipulative limitations; can stoop, climb, kneel, and crouch frequently; and has no need for assistive devices. (TR. 317).

Dr. Rodriguez reported on June 19, 2010, that Plaintiff had no history of mental health care or treatment, including any type of counseling. (TR. 227). During the examination, Dr. Rodriguez found Plaintiff was coherent and organized and there was no tangentially or loosening of associations; she was relevant and non-delusional; there was no bizarre or psychotic thought intent and she denied recent auditory or visual hallucinations; she was alert and oriented in all spheres and appeared to be at least of average intelligence. (TR. 229-230). Dr. Rodriguez diagnosed Plaintiff with major depressive disorder and a Global Assessment of Functioning ("GAF") of 65 indicating some mild symptoms or some difficulty in social, occupational, or school functioning. (TR. 231-232).

Second, the ALJ assigned less weight to the physical residual functional capacity assessment by Dr. Yee and affirmed by Dr. Reddy dated June 29, 2010, because these non-examining physicians did not have the opportunity to review the additional medical evidence submitted after evaluations, hear the sworn testimony of Plaintiff, nor observe Plaintiff's demeanor. (TR. 24-25).

13cv0267

_Third_, the ALJ also relied directly on Dr. Hurd's treatment notes and specifically pointed out where Dr. Hurd's findings contradict her marked physical limitations: (1) on June 8, 2010, Dr. Hurd noted Plaintiff's symptoms were out of proportion to findings on x-ray; (TR. 22-23); (2) Dr. Hurd's notations reveal virtually normal physical examinations. (TR. 23-24). Specifically, the ALJ rejected Dr. Hurd's opinion in her July 2010 letter because her opinion conflicts with the substantial evidence of record, particularly, Dr. Hurd's own treatment notes and x-rays. (_See_ TR 300-301, 217-218, 279-287, 289, 290-291). Further, after review of the entire record, the ALJ determined the evidence documented less severe limitations than those posed by Dr. Hurd in the July 2010 letter. (TR. 22, 23-24, 215-216, 224, 235, 282-283, 287, 289, 313-317).

Dr. Hurd's July 2010 letter noted that Plaintiff suffers from chronic back pain accompanied with radicular symptoms of numbness and tingling in the legs; she has failed medications; sit and stand less than twenty-five minutes; walking exacerbates her symptoms; cannot lift more than ten pounds; cannot perform repeated bending or twisting; and she cannot climb. (TR. 279). However, Dr. Hurd opines in her assessment, on multiple occasions, that Plaintiff's x-rays do not reveal causation of Plaintiff's pain and that Plaintiff's symptoms are out of proportion to the findings on x-ray. (_See_ TR. 284, 286-287, 290-291). On June 8, 2010, Dr. Hurd noted Plaintiff exhibited tenderness in her paraspinous muscles, straight leg test and motor examination were normal, and reported Plaintiff's symptoms as out of proportion based on the x-ray findings. (TR.

13cv0267

291). On July 20, 2010, on the same date the letter was written, Dr. Hurd noted in her treatment notes that Plaintiff's symptoms were not in proportion with the x-ray finding. (TR. 287).

Dr. Hurd's treatment notes also assess Plaintiff as generally healthy. (TR. 215-216, 224, 235, 282-283, 287, 289, 313-317). On July 1, 2010, Dr. Hurd reported Plaintiff again as healthy-appearing, well-nourished, and well-developed, in no acute distress, ambulating normally, normal gait, with good reflexes and coordination. (TR. 289). On July 20, 2010, Dr. Hurd reported Plaintiff had normal reflexes, normal motor strength in her hips, legs, knees, ankles, and feet, with some tenderness in the lumbar spine and some pain on flexion and extension. (TR 287). On September 7, 2010, Dr. Hurd noted her general appearance as healthy-appearing, well-nourished, and well-developed. (TR. 285).

On March 1, 2011, Plaintiff reported to Dr. Hurd that she did not follow her home exercise program and only used Norco periodically, and Dr. Hurd opined that Plaintiff was in no acute distress, motor strength and tone were normal, no tenderness, or bony abnormalities, normal movement of all extremities, and prescribed weight loss via a home exercise program. (TR. 283-284). Dr. Hurd also opined that Plaintiff's x-ray on July 14, 2011 revealed no clear manner of causation of chronic back pain and prescribed a home exercise program. (TR. 286-287, 283-284).

The ALJ additionally relied on Dr. Amado's consultive psychiatric review dated June 29, 2010. On May 15, 2009, Dr. Amado assessed Plaintiff's mental functional capacity based solely upon Plaintiff's medical records. (TR. 239-252). Dr. Amado found that

13cv0267

the objective medical evidence supported a finding that the claimant had medically determinable major depressive disorder and ruled out anxiety disorder not otherwise specified. (TR. 242-243). Dr. Amado concluded that if Plaintiff "is properly treated for depression she could easily recover from her symptoms in the next twelve months." (TR. 252). Dr. Amado's opinion was affirmed by Nicole Lazorwitz, Psy.D., on September 14, 2010. (TR. 271).

As a result, the ALJ properly gave specific and legitimate reasons as to why he gave little weight to Dr. Hurd's July 2010 letter outlining Plaintiff's functional limitations, and greater weight to Drs. Sabourin, Rodriguez, and Amado. The ALJ's findings were supported by substantial evidence in the record, including the findings of an examining physician, consulting physician, and the results of objective clinical tests. The Court is satisfied that the ALJ committed no legal error, as the specific and legitimate standard was appropriately applied.

B. <u>SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S FINDING THAT PLAINTIFF WAS NOT CREDIBLE</u>

Plaintiff argues that the ALJ did not have a valid basis for finding her testimony not credible. (Doc. No. 12-1 at 10). Specifically, she alleges that, while the ALJ cited multiple reasons for rejecting her testimony, the ALJ's reasons were not clear and convincing reasons for rejecting pain and limitation testimony. (<u>See</u> Doc. No. 12 at 11 citing to <u>Smolen</u>, 80 F.3d at 1281 ["When no evidence of malingering exists in the record, the ALJ must articulate clear and convincing reasons for rejecting the pain and limitation testimony."].

13cv0267

1  Defendant argues that the ALJ provided the requisite specific

2  findings for discounting Plaintiff's testimony concerning the

3  severity of her symptoms by citing to the lack of significant

4  clinical findings, inconsistencies between Plaintiff's claimed

5  limitations and objective medical findings, evidence of exaggerated

6  symptoms, and ordinary activities of daily living. (Doc. No. 14-1

7  at 9). Further, Defendant contends that there was evidence of

8  Plaintiff's malingering and this is supported by the ALJ's finding

9  that the medical record indicated her symptoms may not have been as

10 limiting as she alleged. (Doc. No. 14-1 at 8-9).

11     1.  APPLICABLE LAW

12  Congress expressly prohibits granting disability benefits

13 based on subjective complaints. 42 U.S.C. § 423(d)(5)(A) ("An

14 individual's statement as to pain or other symptoms shall not alone

15 be conclusive evidence of disability"); 20 C.F.R. § 404.1529(a) (An

16 ALJ will consider claimant's statements about pain or other symptoms

17 but they will not alone establish disability). An ALJ cannot be

18 required to believe every allegation of disability, or else

19 disability benefits would be available for the taking, which would

20 be contrary to the Act. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.

21 1989). However, to discredit a claimant's testimony when a medical

22 impairment has been established, the ALJ must provide "specific,

23 cogent reasons for the disbelief." Orn, 495 F.3d at 635. An ALJ's

24 credibility finding must be properly supported by the record and be

25 sufficiently specific to ensure that he did not "arbitrarily

26 discredit" a claimant's subjective testimony. Thomas v. Barnhart,

27 278 F.3d 947, 958-59 (9th Cir. 2002); Bunnell v. Sullivan, 947 F.2d

28

13cv0267

341, 345-46 (9th Cir. 1991).  "General findings are insufficient; rather, the ALJ's reasons must identify what testimony is not credible and what evidence undermines Plaintiff's complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir.1998) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996)).

In making a credibility determination, the ALJ may consider a variety of credibility factors, including ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; the claimant's daily activities; nature, location, onset, duration, frequency, radiation, and intensity of pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and adverse side-effects of any medication; treatment, other than medication; functional restrictions; and unexplained, or inadequately explained, failure to seek treatment or to follow a prescribed course of treatment.  Bunnell, 947 F.2d at 346-47; Smolen 80 F.3d at 1284; see Orn, 495 F.3d at 637-39.

### 2.  ANALYSIS

The ALJ gave specific reasons, supported by substantial evidence, for discounting Plaintiff's testimony.  The ALJ found Plaintiff's testimony not credible concerning the intensity, persistence and limiting effects of her symptoms because they were inconsistent with the residual functional capacity assessment. (TR. 22).  The ALJ considered the medical record as a whole, and determined that the record fails to document any objective clinical findings establishing that Plaintiff was not able to perform light

13cv0267

work.  (TR. 22).  The ALJ gave specific reasons, supported by substantial evidence, for discounting Plaintiff's testimony.

First, in making this determination, the ALJ considered the treatment notes of the treating physician, Dr. Hurd. (TR. 22).  The ALJ cites to Dr. Hurd's treatment notes indicating Plaintiff's symptoms were not as limiting as Plaintiff claims; (1) On June 8, 2010, Dr. Hurd reported Plaintiff's symptoms were out of proportion with her findings on x-ray; (2) on July 1, 2010, Dr. Hurd opined that Plaintiff had a normal gait, 2+ reflexes throughout, and intact coordination testing; and (3) on July 21, 2010, Dr. Hurd reported that Plaintiff had a 5/5 motor strength in the lower extremities in each muscle group.  (TR. 22).  In addition, Dr. Hurd opines in her assessment, on multiple occasions, that Plaintiff's x-rays do not reveal causation of Plaintiff's pain and that Plaintiff's symptoms are out of proportion to the findings on x-ray. (See TR. 284, 286-287, 290-291).  On September 7, 2010, Dr. Hurd noted Plaintiff's general appearance as healthy-appearing, well-nourished, and well-developed. (TR. 285).  On July 1, 2010, Dr. Hurd reported Plaintiff again as healthy-appearing, well-nourished, and well-developed, in no acute distress, ambulating normally, normal gait, with good reflexes and coordination. (TR. 289).  On March 1, 2011, Dr. Hurd opined that Plaintiff was in no acute distress, motor strength and tone were normal, no tenderness, or bony abnormalities, normal movement of all extremities, and prescribed weight loss via a home exercise program.  (TR. 283-284).  Dr. Hurd also opined that Plaintiff's last x-ray revealed no clear manner of causation of chronic back pain and prescribed a home exercise program. (TR. 286-

13cv0267

287, 283-284).

Second, the ALJ considered Dr. Sabourin's orthopedic physical examination of Plaintiff and his review of her medical records on August 4, 2011.  (TR. 22).  Dr. Sabourin noted that Plaintiff maintained a normal posture; sat comfortably; walked without a limp and without a cane; able to get in and out of a chair and on and off the examination table without difficulty; toe and heel walking was normal; normal range of motion of her cervical spine; full range of motion of her extremities; no lumbar palpable spasm, or swelling, or warmth; straight leg testing was negative; exhibited give way testing in all muscles of the upper and lower extremities.  (TR. 22).  Based on the opinions of Drs. Sabourin and Hurd, the ALJ found Plaintiff's complaints were not fully substantiated by the objective medical conclusions, and that Plaintiff's symptoms may not have been as limiting as she alleged.  (TR. 22).

Third, the ALJ considered Plaintiff's treatment, any treatment other than medication, and the medical record to determine that Plaintiff has not received significant active care other than conservative routine maintenance.  Evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding severity of an impairment.  Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (citing Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir.1995)).  The ALJ emphasized that Plaintiff's complaints of disabling back and leg pain are unsubstantiated by x-rays, Drs. Hurd and Sabourin's reports, including Plaintiff's treating physician's findings that Plaintiff's complaints were out of proportion with the medical findings.  (TR. 22).

13cv0267

In addition, the ALJ pointed out that there has been no significant increase or changes in Plaintiff's medication that would indicate an uncontrolled condition. (TR. 22). Although Plaintiff claims that her medications failed her and made her sleepy, Plaintiff reported to Dr. Hurd on March 1, 2011, that she used Norco periodically, not regularly. (TR. 281). The ALJ noted further that Plaintiff's side effects from her medication would not prevent her from substantial gainful activity. (TR. 22).

Fourth, the ALJ rejected Plaintiff's testimony because the overall record suggests that Plaintiff has the ability to care for herself and maintain her home. (TR. 23); See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)(stating that adverse credibility based on activities may be proper if a claimant engages in numerous daily activities involving skills that could be transferred to the workplace.). The ALJ emphasizes that Plaintiff, Plaintiff's daughter, and examining physicians, Drs. Sabourin and Rodriguez, describe daily activities which are not that limited given the complaints of disabling symptoms and limitations. (TR. 23). The ALJ determined that the performance of Plaintiff's daily activities as described in the record is not inconsistent with the performance of many basic work activities. (TR. 23).

Fifth, because of the close contact with Plaintiff over a period of time, the ALJ considered the Plaintiff's daughter's opinion in a third party function report dated June 2, 2010. (TR. 23). However, the ALJ gave little weight to this opinion because there is no evidence in the record to suggest that Plaintiff's daughter has any form of medical expertise, medical training, or is

13cv0267

familiar with the Social Security Act, rules, or regulations. (TR. 23). Further, because this opinion is from one with a familial relationship with Plaintiff, the ALJ did not give this opinion significant weight. (TR. 23).

Based on these considerations set forth by the ALJ, Plaintiff's medical records, treating physician's treatment notes, examining physician's assessments, and Plaintiff's test results are substantial evidence that Plaintiff's statements concerning her symptoms were unreliable. Given the aforementioned discussion of the ALJ's reasons for discrediting Plaintiff's opinion, the Court finds that the ALJ properly set forth specific reasons, supported by substantial evidence, in determining that Plaintiff's statements lacked credibility.

VIII

CONCLUSION AND RECOMMENDATION

After a review of the record in this matter, the undersigned Magistrate Judge RECOMMENDS that the Plaintiff's Motion for Summary Judgment be DENIED and Defendant's Cross Motion for Summary Judgment be GRANTED.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provision of 28 U.S.C. § 636(b)(1).3.

**IT IS ORDERED** that no later than <u>November 21, 2013</u>, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall

13cv0267

1  be filed with the court and served on all parties no later than ___

2  December 5, 2013 The parties are advised that failure to file

3  objections within the specified time may waive the right to raise

4  those objections on appeal of the Court's order.  Martinez v. Ylst,

5  951 F.2d 1153 (9th Cir. 1991).

6

7  DATED: October 29, 2013

8

9

10  _____

11  Hon. William V. Gallo
    U.S. Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13cv0267